UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DEMETRIUS FLOWERS,

        Petitioner,

v.                                     Case No:  5:18-cv-315-TPB-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

        Respondents.
_____/

## ORDER DENYING THE PETITION AND DISMISSING CASE WITH PREJUDICE

### I.    Status

Petitioner, Demetrius Flowers, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Respondents filed a Response (Doc. 13).[1] The Court provided Petitioner with an opportunity to reply (Doc. 17), but he did not do so. This case is ripe for review.

### II.    Procedural History

A jury found Petitioner guilty of principal to robbery with a firearm (count four) and principal to kidnapping (count five) (Resp. Ex. D). The trial court sentenced Petitioner to concurrent forty-year terms of incarceration as to each count followed by a twenty-year term of probation (Resp. Ex. I). Petitioner, with help from

_____

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

appellate counsel, sought a direct appeal (Resp. Ex. K), in which he argued four claims of trial court error. The Fifth District Court of Appeal per curiam affirmed Petitioner's judgment and convictions without a written opinion (Resp. Ex. N).

Petitioner then filed with the trial court a pro se Florida Rule of Criminal Procedure 3.850 motion for postconviction relief (Resp. Ex. Y), raising four claims for relief. The trial court summarily denied the Rule 3.850 motion (Resp. Ex. BB). Petitioner appealed and the Fifth DCA per curiam affirmed the summary denial without a written opinion (Resp. Ex. FF). Petitioner later filed the Petition (Doc. 1) raising eight grounds for relief.

## III.   Governing Legal Principles

### A. Standard of Review Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *See Marshall v. Sec'y Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100

(2011). When the state court's adjudication on the merits is unaccompanied by an explanation, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* [at 102] (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with

> unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410
> (2000) ("[A]n unreasonable application of federal law is
> different from an incorrect application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court remedies

available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To

exhaust state remedies, the petitioner must "fairly present[]" every issue raised in

his federal petition to the state's highest court, either on direct appeal or on

collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted).

Thus, to properly exhaust a claim, "state prisoners must give the state courts one

full opportunity to resolve any constitutional issues by invoking one complete round

of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S.

838, 845 (1999); *see also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting

"that *Boerckel* applies to the state collateral review process as well as the direct

appeal process.").

A state prisoner's failure to properly exhaust available state remedies leads

to a procedural default which raises a potential bar to federal habeas review. The

United States Supreme Court has explained the doctrine of procedural default as

follows:

> Federal habeas courts reviewing the constitutionality of a
> state prisoner's conviction and sentence are guided by rules

> designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g., Coleman,*[2] 111 S. Ct. 2546; *Sykes,*[3] 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin,* 131 S. Ct. 1120, 1127-1128, (2011); *Beard v. Kindler,* 130 S. Ct. 612, 617-618 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman,* 111 S. Ct. 2546.

*Martinez v. Ryan,* 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. *Ward v. Hall,* 592 F.3d 1144, 1157 (11th Cir. 2010).

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."

---

[2] *Coleman v. Thompson,* 501 U.S. 722 (1991).

[3] *Wainwright v. Sykes,* 433 U.S. 72 (1977).

*Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687.

Further, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV.   Analysis

### A. Ground One

Petitioner argues that the trial court erred in instructing the jury that it could find Petitioner guilty of robbery while carrying a firearm if it found that Petitioner's co-defendant and accomplice merely possessed a firearm during the robbery, and that Petitioner was a principal to that crime (Doc. 1 at 4). According to Petitioner, the principal theory was not charged in the information (*id.*), and this erroneous instruction violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution (*id.* at 4). Petitioner raised a similar claim on direct appeal (Resp. Ex. K). The state filed an answer brief addressing the claim on the merits (Resp. Ex. L at 7-10), and the Fifth DCA per curiam affirmed Petitioner's judgment and conviction without a written opinion (Resp. Ex. N).

Respondents contend that Petitioner failed to fairly present the federal nature of this claim in state court, and thus it is unexhausted and procedurally barred (Resp. at 13). This Court agrees. When briefing this issue on direct appeal, Petitioner did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee (Resp. Ex. K at 14-15). Instead, Petitioner argued, in terms of state law only, that the trial court's instruction on the principal theory was analogous to the instruction the Second District Court of Appeal found erroneous in *Deleon v. State*, 66 So. 3d 391 (Fla. 2d DCA 2011) (*id.* at 14). According to Petitioner, the subject "instruction allowed the jury to convict [Petitioner] as [a] principal to one crime if it found his accomplice guilty of another,

uncharged act" (*id.* at 15 (citing *Lakey v. State*, 113 So. 3d 90 (Fla. 5th DCA 2013); *Phillips v. State*, 100 So. 3d 249 (Fla. 4th DCA 2012); *Sabree v. State*, 978 So. 2d 840 (Fla. 4th DCA 2008)). Petitioner failed to articulate and fairly present a federal constitutional claim in state court. Thus, Ground One is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for or prejudice from this procedural bar. He has also failed to show a fundamental miscarriage of justice.

In any event, assuming the federal nature of this claim was exhausted, it is still without merit. "Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005). "If there is no basis in the record for the instruction given, such error may raise a 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' and reversal may be required." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985) (quoting *McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1509 (11th Cir. 1990)).

Under the principal theory, a defendant is treated as if he committed the acts done by the other person. *See* Fla. Std. Jury Instr. 3.5(a). "[P]osession of a firearm by a codefendant is sufficient to convict a defendant of armed robbery, pursuant to the principal theory." *Freeny v. State*, 621 So. 2d 505, 506 (Fla. 5th DCA 1993). Here, Petitioner and co-defendant Charles Bess were charged in the same

Information (Resp. Ex. A). Count one of the Information alleged that Bess "actually carried and possessed a 'firearm'" while committing the robbery (*id.* at 5). Before trial, Bess pled guilty to count one. Count four of the Information charged Petitioner with principal to robbery with a firearm, alleging that Petitioner carried a firearm, which was "in the possession of Charles Bess" (*id.* at 6). The trial court instructed the jury that if it found that Petitioner carried a firearm while committing the robbery, it should find him guilty of robbery with a firearm (Resp. Ex. C at 480). Alternatively, the trial court instructed that if the jury found that the firearm was in codefendant Bess' possession and Petitioner acted as a principal to the commission of the robbery, the jury should find Petitioner guilty of robbery with a firearm (*id.* at 480-81). The trial court did not instruct the jury on an uncharged crime.

Further, the state presented sufficient evidence to support a guilty verdict for the armed robbery charge. The victim testified that he knew Petitioner and Bess who were initially at the victim's home to play video games (Resp. Ex. C at 135-37). Bess hit the victim with a firearm and Petitioner then hit the victim with a hard, metal object, which the victim believed was the same firearm (*id.* at 137). Petitioner covered the victim with a blanket and ordered him to go into the bedroom. Bess then tied up the victim, and Bess and Petitioner stole the victim's personal belongings (*id.* at 142-45). Petitioner's fingerprints were later found on the victim's recovered television set. Ground One is denied.

### B. Ground Two

Petitioner appears to argue that the trial court erred in denying Petitioner's motion for judgment of acquittal as to the kidnapping charge because the evidence failed to satisfy the first prong of the test in *Faison v. State*, 426 So. 2d 963 (Fla. 1983) (Doc. 1 at 8). Petitioner contends that "the victim's hands were left unbound, he could and soon did remove the fetters from his ankles after the crime ended"; and thus the evidence showed that "the movement and the confinement which occurred during the robbery was slight, inconsequential, and incidental to the crime" (*id.* at 7-8). According to Petitioner, this error violated his rights under Sixth and Fourteenth Amendments (*id.*).

Petitioner raised a similar claim on direct appeal (Resp. Ex. K at 16-18). The state addressed the claim on the merits (Resp. Ex. L at 10-13), and the Fifth DCA per curiam affirmed Petitioner's judgment and convictions without a written opinion (Resp. Ex. N). Respondents again argue, and this Court agrees, that because Petitioner did not present the federal nature of this claim to the state appellate court, it is unexhausted and procedurally barred (*id.*). Petitioner has failed to show cause for or prejudice from this procedural bar. He has also failed to show a fundamental miscarriage of justice.

In any event, assuming the federal nature of this claim was exhausted, it is without merit. When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Id.* To prove kidnapping, the state had to establish that Petitioner "forcibly, secretly, or by threat" confined, abducted, or imprisoned the victim against his will "and without lawful authority, with intent to . . . commit or facilitate the commission of any felony." § 787.01(1)(a), Fla. Stat. "[T]o be kidnapping, the resulting movement or confinement: (a) must not be slight, inconsequential and merely incidental to the other crime." *Faison*, 426 So. 2d at 965; *see also Berry v. State*, 668 So. 2d 967, 969 (Fla. 1996) ("We construe this prong to mean that there can be no kidnapping where the only confinement involved is the sort that, though not necessary to the underlying felony, is likely to naturally accompany it.").

At trial, the victim testified that Bess hit him with a firearm and Petitioner then instructed the victim to crawl into the other room before putting a blanket over the victim's head. Petitioner then instructed Bess to tie up the victim, so Bess bound the victim's feet with electrical tape. After Petitioner and Bess left, the victim waited several minutes, then hopped to a nearby window to confirm if the assailants were gone. Once confirmed, the victim untied his feet and ran to a neighbor's home. This evidence established that the victim was confined by force, threat, and against his will. The confinement made it easier for Petitioner to commit the robbery and the confinement did not end until the robbery was complete. This evidence supports a finding of guilt. Ground Two is denied.

### C. Ground Three

Petitioner contends that his Sixth and Fourteenth Amendment rights were violated when the trial court instructed the jury that it could find Petitioner guilty of robbery with a firearm if it found that Bess possessed a firearm, even if Petitioner lacked knowledge of or intent that Bess possess a firearm (Doc. 1 at 10-12). According to Petitioner, this instruction disregarded the plain language of sections 777.011 and 812.13(2)(A), Florida Statutes, and was used in contravention of Florida Rule of Criminal Procedure 3.985 (*id.*). Petitioner also asserts that "this error foreclosed any opportunity for the jury to find [Petitioner] guilty of simple robbery even where he lacked the requisite intent to be a principal to the carrying of a firearm" (*id.*).

Petitioner raised this claim on direct appeal (Resp. Ex. K at 19-23). The state filed an answer brief (Resp. Ex. L at 13-17), arguing it was not required to prove under Florida law that Petitioner knew that Bess carried a firearm and that the trial court's instructions were proper. The Fifth DCA affirmed Petitioner's judgment and convictions without a written opinion (Resp. Ex. N).

Respondents contend that this claim is not cognizable on federal habeas review because it is an issue of state law (Resp. at 21). First, if Petitioner urges that the state court erred under Florida law when it instructed on the standard and special instructions for robbery with a firearm under the principal theory, this assertion is not cognizable on federal habeas review. The Eleventh Circuit has explained:

> Federal habeas relief is unavailable "for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting

> *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). A jury
> instruction that "was allegedly incorrect under state law is
> not a basis for habeas relief," *id.* at 71-72, because federal
> habeas review "is limited to deciding whether a conviction
> violated the Constitution, laws, or treaties of the United
> States." *Id.* at 68. Unlike state appellate courts, federal
> courts on habeas review are constrained to determine only
> whether the challenged instruction, viewed in the context
> of both the entire charge and the trial record, "'so infected
> the entire trial that the resulting conviction violate[d] due
> process.'" *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S.
> 141, 147 (1973)).

*Jamerson,* 410 F.3d at 688 (quoting *Estelle*, 502 U.S. at 72). The Court notes that in

his initial brief on direct appeal, Petitioner urged the state appellate court to extend

the reasoning in *Rosemond v. United States*, 134 S. Ct. 1240 (2014), to his case

(Resp. Ex. K at 22). However, *Rosemond* is distinguishable from Petitioner's state

case, and merely citing a federal case does not take this claim outside the state law

issue on which it rests.

In *Rosemond*, the Supreme Court "consider[ed] what the Government must

show when it accuses a defendant of aiding or abetting" a violation of 18 U.S.C. §

924(c), which "prohibits 'us[ing] or carr[ying]' a firearm 'during and in relation to

any crime of violence or drug trafficking crime.'" *Rosemond*, 134 S. Ct. at 1243

(quoting 18 U.S.C. § 924(c)). The Court held that the jury instruction on aiding and

abetting that the district court gave was inadequate "because it did not explain that

[the defendant] needed advance knowledge of a firearm's presence" to be found

guilty and therefore made it possible that the jury had convicted without the

defendant having the requisite advance knowledge. *Id.* at 1251-52. However, the

Supreme Court's ruling in *Rosemond* on the adequacy of a § 924(c) jury instruction

is inapplicable to petitioner's state conviction for principal to a robbery with a firearm. Notably, as the state explained in its answer brief on direct appeal, "'nothing in *Rosemond* suggests that it's holding rests on any constitutional requirement or has any application to state criminal laws on accomplice liability.'" Resp. Ex. L at 17 (quoting *State v. Ward*, No. WD 77681, 2015 WL 6918618, at *5 (Mo. Ct. App. Nov. 10, 2015)). *See also Hicks v. State*, 759 S.E. 2d 509, 514 n.3 (Ga. 2014), *cert. denied*, 135 S. Ct. 1436 (2015) (explaining that *Rosemond* "arose under federal law and thus does not control here"). As such, this claim is not cognizable on federal habeas review, and the Court must defer to the state court's adjudication of state law issues. Ground Three is denied.

### D. Ground Four

Petitioner contends that the trial court violated his rights under the Sixth and Fourteenth Amendments when it considered Petitioner's lack of remorse in sentencing him (Doc. 1 at 12-13). Petitioner raised this claim on direct appeal (Resp. Ex. K at 24-25). The state filed an answer brief addressing the claim on the merits and arguing that the trial court considered appropriate factors when imposing a lawful sentence (Resp. Ex. L at 18-22) The Fifth DCA per curiam affirmed Petitioner's judgment and convictions without a written opinion (Resp. Ex. N).

Again, Petitioner does not allege a federal constitutional violation, and thus this claim is not cognizable in a federal habeas proceeding. *See Hart v. Sec'y, Dep't of Corr.*, 8:16-cv-770-T-36AAS, 2019 WL 367647, at *2 (M.D. Fla. Jan. 30, 2019) (finding claim that trial court improperly considered the petitioner's "lack of

remorse" during state court sentencing not cognizable in § 2254 habeas proceeding). Further, liberally construing this claim as one involving federal due process, it is barred from the Court's review because Petitioner failed to exhaust the federal nature of the claim with the state appellate court. Instead, on direct appeal, Petitioner argued in terms of state law only, that the trial court's alleged consideration of Petitioner's lack of remorse was analogous to that found to be erroneous in *Dumas v. State*, 134 So. 3d 1048 (Fla. 1st DCA 2013) (Resp. Ex. K at 24-25). Petitioner failed to articulate and fairly present a federal constitutional claim in state court. Thus, Ground Four is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for or prejudice from this procedural bar. He has also failed to show a fundamental miscarriage of justice. Ground Four is denied.

### E. Ground Five

Petitioner asserts that his trial counsel was ineffective for failing to challenge the lack of evidence showing that Petitioner or Bess used a firearm during the commission of the offense (Doc. 1 at 15-16). According to Petitioner, if trial counsel made such an argument, there is a reasonable probability that the state would have "been compelled to either drop the charge or settle for a conviction for a lesser included offense" (*id.* at 16).

Petitioner raised this claim in his Rule 3.850 motion (Resp. Ex. Y at 2-4). The trial court summarily denied the claim:

> In the Defendant's first ground, he alleges his trial counsel was ineffective for failing to argue that a firearm was never used by the co-defendant in this case. Specifically, the Defendant alleges the victim testified at trial he was

uncertain what the co-defendant hit him with, so his trial counsel should have argued that no proof existed that a firearm was used. The Defendant also alleges the co-defendant testified that he did not have a firearm and was not guilty, but entered a plea to robbery with a firearm to avoid a life sentence. The Defendant further alleges that had trial counsel argued no proof existed of the use of a firearm, the result of the trial would have been different.

At trial, the victim testified as follows:

Q Now, I want to now move ahead to the night of the beating and robbery.

What was going on shortly before that?

A It was just normally how it would usually be. Demetrius came over, and we started just playing 2K like we had talked about earlier. We had talked about what teams we were going to play that day, me and him, you know, beat.

So I was ready for him to come over. And he came over probably 8:50, just right at the end of the TV show I was watching. So he came over. We played for about − started up the game, about 15 minutes into it, that's when Mr. Bess came over. He knocked on the door.

Q Did you open the door?

A Yeah. I looked in the − you know, I always keep my door locked. But I looked in the peephole, and it was Bess; and I was, you know, expecting him to come over. He had been over every other time. So I opened up the − you know, I unlocked the door; opened it up.

And when he walked in, I, you know, proceeded to close the door and, you know, lock the door just like usual.

Q Did something happen at that moment?

A Yeah. Right whenever I turned around, Bess was coming at me with just something, you know, real quick, you know; his fist was holding something, coming at me. And I'm about eight inches taller than him. So I was up well above him. And I saw something coming at my face. So I just, you know, ducked in my head just to take the blow to the top of my head because I didn't want to get hit in the face. And he hit me with something really hard, and it hurt. So I, you know, ducked. And I kind of, you know, it didn't knock me down me down initially.

So I looked back up, and I was like he hit me with something; and I saw he had a gun in his hand. It wasn't pointing it at me, he was just holding it – after he hit me, he was holding it to the side, telling me to get on the ground. So I saw he had a gun in his hand holding it, you know, like he, you know, was ready to shoot me.

So then I immediately fell to the ground and just put my hands over my face just to not get hit in the face.

Q And go ahead and describe to the jury the gun that you saw in Mr. Bess' hand.

A It – let me see. It looked like just a regular pistol, just a black pistol, barrel, I mean, probably like five or six inches. And then at the end there was a like a – what I thought was a silencer because it was even longer than just a regular pistol you would see, it was kind of – like actually three inches on top of the gun. So I, you know, was really worried because it had a silencer on the gun; and I had never seen that, you know, never seen a gun let alone a silencer.

> So I, you know, immediately just covered my face. And that's all I did see of the gun. But he was holding – it like he was – you know, would shoot me. So I just covered my face because I – I didn't want to get beat more, so I was going to cover my face.

> The victim specifically clarified on cross-examination that he saw the gun for a few seconds, and that what he saw was definitely a gun.

> In addition, the Defendant's trial counsel argued during his closing argument that (1) the victim's testimony that he saw a gun did not comport with the other evidence presented at trial, specifically the testimony of the co-defendant, (2) the victim's testimony is not enough proof that a gun was actually used, and (3) the victim was actually struck with a cell phone rather than a gun. The record is thus clear that the Defendant's trial counsel did, in fact, argue that a gun was never used by the co-defendant in the instant case. The Defendant's claim is therefore refuted by the record. Moreover, the victim's testimony at trial was direct evidence that a gun was used during the commission of the crimes. Trial counsel therefore was not ineffective for failing to prevail in the argument alleged by the Defendant. *See Teffeteller v. Dugger*, 734 So. 2d 1009, 1020 (Fla. 1999). The Defendant's first ground is without merit.

Resp. Ex. BB at 2-4 (record citations omitted). Petitioner appealed, and the Fifth

DCA per curiam affirmed the trial court's denial without a written opinion (Resp.

Ex. FF).

The Court addresses the claim in accordance with the deferential standard

for federal court review of state court adjudications. In doing so, the Court notes

that the trial court adequately summarized the evidence adduced at trial and trial

counsel's attempts to discredit the victim's testimony. Upon thorough review of the

record and the applicable law, the Court finds that the state court's decision to deny

Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Five is denied.

### F. Ground Six

Petitioner contends that his trial counsel was ineffective for failing to "object to the lack of evidence" (Doc. 1 at 16-17). According to Petitioner, the evidence could not support his conviction for kidnapping (*id.* at 17). Instead, he asserts that the evidence presented only supported the lesser included offense of false imprisonment and thus counsel should have challenged Petitioner's kidnapping conviction.

Petitioner raised this claim in his Rule 3.850 motion (Resp. Ex. Y at 4-6). The trial court denied the claim, finding the following:

> The Defendant alleges the evidence presented at trial did not support a guilty verdict for kidnapping, specifically because "(l) victim was only moved from the front door to the couch where Flowers (defendant) was located; the movement of the victim remained slight; (2) was inconsequential and inherent in the nature of robbery; and, (3) victim was able to report the crime to law enforcement as soon as the crime ended." Thus, the Defendant alleges but for trial counsel's failure to object to the lack of evidence, the Defendant would not have been found guilty of kidnapping.

> The record shows that at the conclusion of the State's case-in-chief, the Defendant's trial counsel made a motion for judgment of acquittal on the following grounds:

> > MR. BISHOP: Judge, at this time the Defense would make a motion for a judgment of acquittal. And I'll start with – well, let me just say the Defense is alleging the State has failed to make a prima facie case as to – and

that's looking at the, evidence in a light most favorable to the State.

As to the robbery, my argument is there's – the State has not presented competent substantial evidence to support a conviction for armed robbery with a firearm. The only evidence of any firearm being used is the testimony of Joshua Campbell.

THE COURT: Yeah, the victim.

MR. BISHOP: The victim. He said that he saw a gun. But his testimony was, you know, he saw this in a period of less than ten seconds. There's no other evidence. As a matter of fact, the co-defendant, Mr. Bess testified there was no gun. In fact he hit – hit –

THE COURT: I concur about it, I think it's a jury question.

MR. BISHOP: – the victim on the head.

THE COURT: He said there was. The other said there wasn't. It's up to the jury to determine whether or not there was.

MR. BISHOP: Well, I understand it's a question of fact.

THE COURT: And he did –

MR. BISHOP: I'm just arguing –

THE COURT: – he –

MR. BISHOP: – I'm just arguing that –

THE COURT: – yeah, he was – Bess pled guilty to a charge involving a firearm.

MR. BISHOP: Right. Not withstanding [sic] the fact that he claims there was no firearm.

THE COURT: I understand. I understand. Best interest plea.

MR. BISHOP: So I would ask you to knock the armed robbery with a firearm down to a robbery.

THE COURT: Your motion is noted and denied.

MR. BISHOP: Okay. As to the kidnapping count, Mr. McCourt has provided some case law. I don't know – did you give it to the Judge?

MR. MCCOURT: No, sir.

MR. BISHOP: He gave me the case of *Germaine Berry vs. State*. I just wanted to make reference to that because it has the standard from the – from the Supreme Court of Florida in 1996. This deals with the standard for kidnapping. And basically in the top, in the headnote, the Supreme Court, Justice Grimes held that one, confinement of the victim was not slight and inconsequential and merely incidental in the case they were deciding.

THB COURT: Yeah.

MR. BISHOP: My argument would be in this case the evidence that Mr. Campbell's feet were alleged to have been tied up with electrical tape after, you know – and I understand that the State will probably argue the robbery was still ongoing at the time but they had already hid –

THE COURT: That's true but they did cover him up with a blanket.

MR. BISHOP: Well, they put it up – the allegation is a blanket was put over his head.

THE COURT: Right. And they moved him into a room.

MR. BISHOP: Well, I think the victim testified he crawled –

THE COURT: Right.

MR. BISHOP: – into the room.

THE COURT: But they were – I think it was at their, you know, orders.

MR. BISHOP: So I'm focusing on the confinement of his feet being tied together and not his hands. Obviously he got out of the tape very –

THE COURT: Yeah. I understand. And I think it's sufficient at this time to, you know, proceed.

MR. BISHOP: There were a couple of other elements in the case that – if you're interested? But that's my argument –

THE COURT: Okay.

MR. BISHOP: – for the kidnapping. I don't think the State has made a prima facie case –

THE COURT: Well –

MR. BISHOP: – with competent substantial evidence to support a kidnapping charge. So I would ask Your Honor to –

THE COURT: I understand, I, you know, I'm not the trier of fact but I'm going to deny the motion.

Trial counsel also renewed his motion for judgment of acquittal and filed a timely motion for new trial. Both motions pertained to the argument that the evidence produced at trial supporting charged kidnapping was insufficient. It is unclear what more the Defendant's trial counsel could have done to present the argument the Defendant now alleges he failed to raise.

Furthermore, the Defendant's argument that the evidence presented at trial did not support a guilty verdict for kidnapping is itself without merit. The Florida Supreme Court in *Faison v. State* adopted the following test for kidnapping under Fla. Stat. 787.0l(l)(a)(2):

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

> (a) Must not be slight, inconsequential and merely incidental to the other crime;

> (b) Must not be of the kind inherent in the nature of the other crime; and

> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Faison v. Slate*, 426 So. 2d 963, 965 (Fla. 1983) (quoting *State v. Buggs*, 219 Kan. 203, 547 P.2d 720, 731 (1976)). At trial, the victim provided a detailed account of [the] day of the robbery and kidnapping. In particular, the victim testified as follows:

> . . . So Flowers is standing up, he's saying to Bess, just go ahead and tie him up. And he tells me then to put my hands behind my back. So I put my hands behind my back. And that's when Bess starts tying up my feet. And they didn't tie my hands for some reason, they might have been in a rush; but Bess tied up

my feet, you know, pretty tight; it was, you know, hurt my ankles.

Q What did he tie them up with?

A It was I guess electrical tape. I didn't have any in my house, but it must have been something that they brought, but it was electrical tape. When I took it off, that's what it seemed like it was, electrical tape. And they had tied it on pretty tight, so my ankles were hurting. They didn't tie up my hands, they told me just keep my hands behind my back.

And when they did that, you know, they were about to leave –

. . .

Q So after you're tied – they begin to leave after you're taped up?

A Yes. Bess and Flowers both begin to leave once I'm tied up.

Q Now, let me ask you about – you said that the tape was pretty tight on your legs.

A Uh-huh.

Q Was it such that you would be able to get up and walk or step out of it?

A No. No way. It was actually like hurting my ankles.

Q Well, did it restrict your movement at all?

A Yeah. Once they did leave and, you know, they – Mr. Bess and Flowers were, you know – I could hear the, you know, the car being loaded and the car door being opened, the front door being opened. So that's when the

stuff was being loaded, I mean, you know, into my car.

And after about a minute of that, then I hear them shut the door. And I don't hear any more noise. I hear the car door shut. And I'm just, you know, waiting to kind of hear, you know, what, you know, what's happening and are they leaving.

And I hear my car, they try to start my car; and it has like a ten second key alarm in it where if you don't – you have to unlock the car door. If you don't start the car within ten seconds, you're going to get a loud siren noise when you try to start the car.

So I heard the loud siren noise. And I was, you know, pretty scared at that point because they're going to be pissed off, the loud siren just went off. And they're going to come back in really mad at me. And they tried it again like five seconds later, and it makes the noise again.

So I'm, you know, just waiting for them to run through the door and then I say there's an alarm on the car, you going to have to put it – I'm just waiting for them to open the door so I can yell it real quick.

And maybe about ten seconds later I hear them – I hear beep, beep. So I'm like, you know, thank God they figured out that needs to be – there needs to be the, you know, put it in the car alarm with a key.

So they do that. And then I hear the car start up. I don't hear it drive off. I just, you know, they must have gone real slow. I thought they'd be, you know, going real fast. I didn't hear it drive off.

So I'm waiting just for a, you know, couple minutes there. Once I haven't heard anything for a couple minutes, I kind of like hop over like on my knees and, you know, hands over to the window. And I see they're gone. That's when I take the tape off and just, you know, throw it down. And as I'm walking out, I can see myself in the mirror, I stop real quick for a minute, you know – not a minute, like a couple seconds, just to look. Everything is – I look okay, you know, covered in blood but I'm going to survive.

The instant case is very similar in facts to that of *Berry v. State*, 668 So. 2d 967 (Fla. 1996). In *Berry*, the Florida Supreme Court held that the act of tying up a victim during the course of a robbery and leaving the victim tied up after the robbery was completed was not a slight, inconsequential, or incidental confinement under *Faison*. *Id.* at 969. The Court also held that tying up the victims in *Berry* was not a necessary act to complete the robbery, and the only logical reason for it was to aid in making a clean getaway. *Id.* at 969-70. The Court concluded that the confinement in *Berry* met the *Faison* test. *Id.* at 970.

In the instant case, it is clear the confinement of the victim was not slight, inconsequential, or incidental to the robbery, nor was the confinement necessary to complete the robbery. As in *Berry*, the victim was left bound after the Defendant and the co-defendant left the victim's house, and the robbery had been committed independent of the victim being tied up. It is also clear that the purpose of tying up the victim was to aid in the getaway. That the victim was able to free himself relatively quickly does not diminish this fact. *See Ferguson v. State*, 533 So. 2d 763, 764 (Fla. 1988) ("[T]he determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose."). Thus, the argument as to the State's alleged failure to meet prongs of *Faison* was meritless. Trial counsel therefore was not ineffective in this regard. *See Teffeteller*, 134 So. 2d at 1020. The Defendant's second ground is without merit.

Resp. Ex. BB at 4-8 (record citations omitted). Petitioner appealed, and the Fifth DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. FF).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that the trial court adequately summarized the evidence adduced at trial. The Court also made a reasonable conclusion that any challenge to the kidnapping charge under the *Faison* test would have been meritless. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Six is denied.

### G. Ground Seven

Petitioner argues that the cumulative effect of trial counsel's errors, as alleged in "the foregoing claims of ineffective assistance of counsel," deprived him of his rights under the Fifth, Sixth and Fourteenth Amendments (Doc. 1 at 17-18). Petitioner raised this claim in his Rule 3.850 motion (Resp. Ex. Y at 7-8). The trial court summarily denied that claim, finding the following:

> The Court finds that each of the Defendant's claims is insufficient or unsupported by the evidence and therefore the Defendant has suffered no cumulative effect that rendered his representation by trial counsel ineffective. *See Hurst v. State*, l8 So. 3d 975, 1015 (Fla. 2009). The Defendant's third ground for relief is without merit.

Resp. Ex. BB at 9-10. Petitioner appealed, and the Fifth DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. FF). The Fifth DCA's adjudication is entitled to deference.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). The Court thus finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Seven is denied.

### H. Ground Eight

Petitioner contends that the trial court lacked jurisdiction to adjudicate him guilty and sentence him for the principal to kidnapping charge (Doc. 1 at 18). Petitioner raised this claim in his Rule 3.850 motion (Resp. Ex. Y at 8-10). The trial court summarily denied the claim, finding in pertinent part:

> In the Defendant's fourth ground, he alleges this Court lacked jurisdiction to adjudicate and sentence the Defendant for kidnapping. The Defendant alleges he was "never formally arrested, booked, or arraigned on the charge," and thus this Court lacked jurisdiction as to that charge. The Defendant also alleges he never waived arraignment in the instant case.
>
> The Defendant's claim is refuted by the record. On August 26, 2014, the State filed an Information in the instant case, charging the Defendant with principal to robbery with a firearm (Count IV) and principal to kidnapping (Count V). Because of the filing of this Information, pursuant to Art. I, § 15(a) Fla. Const., this Court had jurisdiction. *Cf. Sadler v. State*, 949 So. 2d 303, 305 (Fla. 5th DCA 2007) ("A court's jurisdiction to try an accused defendant is not invoked and does not exist unless the State files an information or indictment.["]). Moreover, on September 4, 2014, the Defendant's trial counsel filed, *inter alia*, a waiver of arraignment. The record thus clearly and wholly refutes the Defendant's fourth ground.

Resp. Ex. BB at 10 (record citations omitted). Petitioner appealed, and the Fifth DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. FF).

Initially, "[a] state court's jurisdiction to enter a judgment and sentence a defendant is a matter of state law that is not cognizable on federal collateral review." *Estrada v. Sec'y, Dep't of Corr.*, No. 8:12-cv-758-T-30EAJ, 2012 WL

1231990, at *1 (M.D. Fla. Apr. 12, 2012). Still, even if this claim were cognizable, the Fifth DCA's adjudication is entitled to deference. In applying such deference, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Eight is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Tampa, Florida, this 13th day of September, 2021.

_____

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

Jax-7

C:     Demetrius Flowers, #U53741
       Counsel of record

---

[4] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.